### Daniel D'Amico v. Department of Social Welfare and David McNab v. Department of Social Welfare

[376 A.2d 1073]

Nos. 336-75 & 338-75

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed June 7, 1977

*William R. Brooks,* Vermont Legal Aid, Inc., St. Albans, for Plaintiffs.

*M. Jerome Diamond,* Attorney General, and *J. Wallace Malley, Jr.,* Assistant Attorney General, Montpelier, for Defendant.

**Billings, J.** This is a consolidated appeal by the Department of Social Welfare from a decision of the Human Services Board on the certified question:

Did the petitioners' "work experience" activities under the Comprehensive Employment Training Act make them ineligible for Aid to Needy Families with Children - Unemployed Father benefits?

The issues of fact and law are identical in both appeals.

The appellees are both married, have children and were receiving public assistance benefits under the Aid to Needy Families with Children - Unemployed Father (ANFC-UF) program. As ANFC-UF recipients, both were also enrolled in the Work Incentive Program (WIN). In the fall of 1974, both appellees became participants in a Comprehensive Employment Training Act (CETA) work experience program and became employed at full-time positions. Subsequently they were placed in a temporarily suspended status under the WIN program.

In August of 1975, the appellees were notified by the Department of Social Welfare that their ANFC-UF benefits would be terminated pursuant to the following State regulation:

Work Experience - Income from placement in CETA Work Experience is subject to the usual ANFC disregards.

An unemployed father under either work experience or public service employment who works more than one hundred hours monthly is not eligible for ANFC. Vermont Welfare Assistance Manual § 2253.4(b).

Since each was employed more than one hundred hours per month, the benefit disqualification was applied. The claimant-appellees pursued available administrative appeals, and the Human Services Board ruled that they were entitled to receive ANFC-UF benefits despite their CETA work experience employment.

The Department essentially argues that the Board exceeded its statutory authority pursuant to 3 V.S.A. § 3091(d) by reversing the Department without adequate legal foundation. That enabling statute limits the power to reverse agency decisions with the following language:

The board shall consider, and shall have the authority to reverse or modify, decisions of the agency based on regulations which the board determines to be in conflict with state or federal law. The board shall not reverse or modify agency decisions which are determined to be in compliance with applicable law, even though the board may disagree with the results effected by those decisions.

The Department's position, based upon the State regulation, is in conflict with the clear reading of the federal regulations as explained more fully below.

At the outset, we would comment that these federal-state "assistance" programs are accompanied by a mass of detailed federal regulations. The programs originate in two federal agencies, the Department of Health, Education and Welfare (ANFC-UF/WIN) and Department of Labor (CETA), and there is some attempt to coordinate these programs.[1] The various regulations speak of wages, basic allowances, incentive allowances, benefits, disregards, etc. Our review of these regulations found that the applicable Department of Labor CETA regulation in effect during 1975, 40 Fed. Reg. 22674, provided that, "Each participant in a work experience activity shall receive allowances or wages." 39 Fed. Reg. 19899 (1974).[2]

In a subsequent section, the regulations provide that:

(1) Incentive allowances, at the rate of $30 per week, are in lieu of basic allowances and shall be paid to participants *receiving public assistance* .... Such allowances shall be disregarded in determining the amount of public assistance payments individuals are entitled to receive under Federal or federally assisted public assistance programs. 39 Fed. Reg. 19900 (1974)[3]. [emphasis added]

These regulations make clear that participation in CETA and the receipt of an incentive allowance in no manner may result in the termination of an ANFC grant.

The Department argues that because the claimants here receive wages, this section is not applicable since the phrase "in lieu of basic allowances" is language of limitation, particularly if read in conjunction with regulation 95.33(d)(4)(vi), which provides that each participant receiving allowances and wages

---

[1]Existing regulations at the time of the Department's decision are found at 39 Fed. Reg. 19899, et seq. (1974), formerly Department of Labor, Subtitle A, 29 C.F.R. § 98.34.

[2]Formerly Department of Labor, Subtitle A, 29 C.F.R. § 95.33(d)(4)(vi).

[3]Formerly Department of Labor, Subtitle A, 29 C.F.R. § 95.34(g)(1).

shall be provided training allowances pursuant to 29 C.F.R. § 95.54. The receipt of these allowances in no way results in the termination of an ANFC grant. The CETA program was designed to provide employment benefits to many continuing recipients of public assistance.

It is clear that persons employed under the WIN program cannot be terminated on the ground that their employment exceeds 100 hours per month. 45 C.F.R. § 233.11(a). Appellees are entitled to the protection of the "will-not-be-denied rule." Appellees had a WIN status when they began their CETA activities, and despite the appellant's arguments to the contrary, WIN and CETA programs are complementary and not separate and distinct. 29 C.F.R. § 56.27 provides that WIN participants entering the CETA program "shall be temporarily suspended from the WIN program." We are convinced that appellees' suspension has not caused them to lose all of the WIN-related benefits. Appellees do retain certain characteristics of a WIN registrant, including the protection of the "will-not-be-denied rule." 45 C.F.R. § 233.11(e). We are convinced that the regulatory scheme and policies of these programs are to provide not only work experience and training, but also a monetary and psychological incentive to regular employment. The fulfillment of these purposes is carried out by the decision of the Board.

We are mindful that the text of the decision of the Board suggests that the benefits ordered were computed on the basis of wage compensation plus a disregard, the latter permitting a portion of the grant to be paid as a supplement to the CETA compensation. Our discussion here speaks in terms of a grant plus an incentive allowance. We would also call attention to 45 C.F.R. § 224.44, which provides for WIN suspended claimants to make an election in the source of compensation to avoid being disadvantaged by the receipt of lesser compensation in another employment or training program. With this in mind, we believe that it is within the technical competence and expertise of the Board through the Department to correctly calculate the benefit payments due, subject of course, to appropriate appeal and review.

*The certified question is answered in the negative, and the order of the Human Services Board is affirmed. Let the result be certified.*

**Daley, J. (dissenting).** I would answer the certified question in the affirmative. In my opinion, the appellees' receipt of wages for their full-time employment under the CETA program defeats any claim they may have for the ANFC allowances.

Certain factual matters, not apparent from the majority opinion, are undisputed and should be noted. The appellee D'Amico and his family, while he was solely under the ANFC/WIN program, received $265 per month. Upon his participation in the CETA program at $2.50 an hour for a forty-hour work week, his gross monthly earnings were approximately $430. The appellee McNab, who was paid $2.75 an hour for his CETA employment at forty hours a week, had gross earnings of approximately $473 a month. This compares with the ANFC/WIN benefits of $385 a month which he and his family received prior to his CETA employment. These CETA earnings, while modest, did exceed the appellees' monthly ANFC benefits and, as such, cannot be characterized as being a disadvantage to the appellees and their families.

As indicated by the majority opinion, the pertinent state regulation provides that an unemployed father who works more than 100 hours per month under "work experience" is ineligible for ANFC-UF benefits. Vermont Welfare Assistance Manual § 2253.4(b). The appellees clearly fall within the purview of this state regulation. Therefore, unless a controlling federal statute or regulation conflicts with or supersedes the state regulation, the appellees are foreclosed from obtaining the claimed allowances. Absent such federal statute or regulation, the state may, within reasonable bounds, limit the receipt of allowances. *New York State Department of Social Services* v. *Dublino*, 413 U.S. 405, 417 (1973).

The federal regulations cited by the appellees and relied upon by the majority opinion cannot, in my opinion, serve as the basis for granting appellees the claimed allowances. Since they both work in excess of the maximum allowable hours, the appellees cannot avail themselves of the HEW regulation which provides that ANFC-UF benefits must be given to any eligible father who is employed less than 100 hours per month. 45 C.F.R. § 233.100(a)(7)(i). Furthermore, 45 C.F.R. § 233.11(e), the so-called "will not be denied rule," is expressly limited to individuals who are certified or participate in a WIN program.

The facts in the present case clearly demonstrate that, at the time of the appellees' employment in the CETA program, they were suspended from the WIN program. In light of this suspension, a suspension which was not challenged by the appellees, I cannot concur in the construction of the regulation which entitles them to WIN allowances in addition to the CETA wages.

The majority opinion brings the appellees within the "will not be denied" rule by characterizing the CETA and WIN programs as complementary. I believe that an analysis of these federal programs will support the contrary conclusion that they are separate and distinct.

The CETA and WIN programs were created by separate statutes (see 29 U.S.C. § 801 et seq. and 42 U.S.C. § 630 et seq.) and are governed by distinct regulations. The WIN program is limited to individuals who receive ANFC benefits; participation in CETA is not conditioned upon ANFC affiliation. WIN work experience is unsalaried, with participants receiving an allowance of $30 per month, and an allowance for travel and expenses, in addition to the basic ANFC grant. CETA employees by law must be paid at least the prevailing minimum wage. There is no maximum time limitation placed upon employment in the CETA program, while there is a durational time limitation of thirteen weeks under WIN. In this state, the WIN program is administered by the Department of Employment Security; the Vermont Comprehensive Employment and Training Office is charged with the responsibility of operating the CETA program.

Albeit the purposes of the two programs coincide to a certain extent, it does not necessarily follow that full-time employment under CETA is to be regarded as being legally equivalent to, or undistinguishable from, participation in a WIN program. The appellees, while they were working for the stated hourly wage under the CETA program, were in a position comparable to fathers who secured full-time employment at the minimum wage in the private sector. Since I am not convinced that the federal regulations relied upon by the appellees entitle them to benefits unavailable to their counterparts in private employment, I cannot join the majority opinion.

I am authorized to state that Mr. Justice Hill concurs in the foregoing dissent.